# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT TACOMA

JAMES V. SWINNIE,

    Plaintiff,

v.

PETE GREEN, Secretary of the Army,

    Defendant.

CASE NO. C08-5073BHS

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant's Motion to Dismiss and/or for Summary Judgment (Dkt. 18). The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

## I. PROCEDURAL BACKGROUND

On February 7, 2008, Plaintiff James V. Swinnie filed a complaint alleging that "Defendant discriminated against him because of his race, disability and sex." Dkt. 1, ¶ 1. Plaintiff claims that Defendant's actions violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, and the Rehabilitation Act. *Id.* ¶ 9.

On February 13, 2009, Defendant filed a Motion to Dismiss and/or for Summary Judgment. Dkt. 18. On March 6, 2009, Plaintiff responded. Dkt. 21. On March 12, 2009, Defendant replied. Dkt. 28.

ORDER - 1

## II. FACTUAL BACKGROUND

Plaintiff is a "male African American." Dkt. 1, ¶ 12. On June 27, 2005, Plaintiff began working for the Transportation Motor Pool ("TMP"), Transportation Division of the Department of Logistics ("DOL") at Fort Lewis. Dkt. 21, Declaration of James Swinnie ("Swinnie Decl."), ¶ 1. Plaintiff held this position until March 31, 2007. Declaration of Garey R. Heumphreus ("Heumphreus Decl."), ¶ 4.

Plaintiff was initially assigned to work at the North Fort TMP. Defendant claims that the drivers assigned to the North Fort TMP operated a variety of large vehicles, including box trucks and tractor trailers. *Id.* ¶ 5. The motor vehicle operators are assigned to trips, referred to as missions, transporting soldiers and supplies wherever they are needed in Fort Lewis or other military installations. *Id.* ¶ 7. Although soldiers normally drive the vehicles, civilian drivers have been utilized in the last few years because most of the active military are in Afghanistan or Iraq. *Id.* The civilian drivers were hired on term appointments with specific not-to-exceed dates and the terms can be renewed if the work is available. *Id.* ¶ 8. Moreover, Defendant claims that the drivers were "on-call" workers and were not guaranteed either overtime hours or a straight 40-hour work week. Dkt. 29, Declaration of Beth L. Mosher ("Mosher Decl."), ¶ 5.

During Plaintiff's employment period, Jerry Reed was the Chief of the Transportation Division, Carlo Sallingcr was the supervisor of the TMPs, and Beth Mosher was the Lead Driver at the North Fort TMP. Heumphreus Decl., ¶ 3. Ms. Mosher explains her managerial duties as follows:

> As Lead [Motor Vehicle Operator ("MVO")] during the relevant time period, I maintained the schedule and assigned the missions for motor vehicle operators working at the North Fort TMP. In this regard, the scope of my authority was limited and did not extend to the authority to hire, fire or to discipline drivers at the North Fort TMP.

Mosher Decl., ¶ 2. Plaintiff claims that Beth Mosher is a female Caucasian. Dkt. 21 at 2.

In March of 2006, Plaintiff claims that the number of hours that he was assigned to work were "significantly decreasing." Swinnie Decl., ¶ 6. Plaintiff contacted a Union

ORDER - 2

Representative, John Fuller, regarding this decrease in hours. Mr. Fuller recounts his involvement as follows:

> I made contact with Mr. Swinnie about a problem that he informed me that he was not getting the overtime that [he] should be receiving and that Ms. Mosher was not distributing the overtime correctly. Upon Mr. Swinnie's complaint, I contacted Mr. Reed, Mr. Salinger and Ms. Mosher. I set up a meeting with Mr. Salinger to talk with him and to check his [overtime] list. I talked with Mr. Salinger, and checked the time cards at his location. I found that Mr. Swinnie was in the top 10 people that work for Ms. Mosher. I then had a meeting with Ms. Mosher, she showed how she drew drivers for the mission assignments, how she kept track of the overtime worked and how she kept track of the entire driver's request for time off. After meeting with Ms. Mosher and Mr. Salinger, I could not find any evidence of any type of wrong doing on the part of management. I informed Mr. Swinnie of my findings and told him that I could not go forward with a complaint that I could not find any evidence of. Mr. Swinnie became very irate and told me since there was nothing that I could do for him he was going to go and make an [Equal Employment Opportunity ("EEO")] claim against Ms. Mosher.

Dkt. 18-2, Exh. B.

On September 7, 2006, Plaintiff contacted the EEO office. Swinnie Decl., ¶ 8. Plaintiff claims that he filed a complaint. *Id*. Defendant contends that Plaintiff did not file a formal complaint until late October. Dkt. 18-2, Exh. D.

Sometime in September, Plaintiff's co-workers became aware of his contact with the EEO office. Dkt. 24, Declaration of Hardeep S. Rekhi, Exh 1., Deposition of Beth Mosher at 58. Ms. Mosher claims that the co-worker came to her "with a boilerplate type of letter . . . ." *Id.* Although the letter was destroyed, Ms. Mosher claims that it contained statements that "on occasions Mr. Swinnie had participated in joking of the sexual nature, of a lewd type . . . and then it was signed by about eight drivers." *Id*. at 59. Ms. Mosher claims that she destroyed the letter and "that was that." *Id*. at 60. Ms. Mosher claims that another complaint regarding Plaintiff was drafted, signed by other drivers, and delivered to Mr. Fuller, the Union Representative. Swinnie Decl., Exh. 7, EEO testimony of Beth Mosher at 151-153.

On or about September 14, 2006, Plaintiff filed a Worker's Compensation Claim for an alleged on-the-job injury. Dkt. 18-2, Exh. G. Defendant claims that, because of

ORDER - 3

this injury, Plaintiff was "off work" until December 1, 2006. Dkt. 18 at 5. During this time period, Plaintiff submitted several doctor's notes in support of his Worker's Compensation Claim. Dkt. 18-2, Exh. H.

On October 23, 2006, Plaintiff filed a formal complaint with the EEO office. Dkt. 18-2, Exh. D. Thereafter, Plaintiff filed several amendments to his initial EEO complaint, adding claims of retaliation. The claims that were finally accepted for investigation were as follows:

> 1. Claim of discrimination based on race (African-American), sex (male), and/or physical disability (back and neck) for not getting an equitable amount of hours between June and September 2006.
> 2. Claim of discrimination because Ms. Mosher gave favorable treatment to another co-worker.
> 3. Claim of retaliation because co-workers signed a petition against him.
> 4. Claim of retaliation because co-workers knew of his complaint.
> 5. Claim of retaliation because Worker's Compensation Specialists challenged his Worker's Compensation Claim.
> 6. Claim of retaliation because his supervisor wanted him to undergo a fitness for duty exam.
> 7. Claim of retaliation because he was reassigned to drive buses to accommodate his lifting restrictions.
> 8. Claim of retaliation because he had to input his time cards directly into the computer.
> 9. Claim of retaliation because co-workers were made aware of his health problems.
> 10. Claim of retaliation because his second Worker's Compensation Claim was delayed.
> 11. Claim of retaliation because his term was not renewed after it expired on March 31, 2007.

Dkt. 18-2, Exhs. E and F.

On December 1, 2006, Plaintiff returned to work. Mosher Decl., ¶ 16. He submitted a doctor's report that indicated he could resume full-time work but that he was permanently restricted from: (1) lifting beyond 25 pounds; (2) climbing on a flat bed; (3) working earlier than 5 a.m.; and, (4) any work that would prevent him from getting restorative overnight sleep. Dkt. 18-2, Exh. I. As a result of these limitations, Defendant claims that Mr. Sallinger assigned Plaintiff to work at the Main Post, TMP. Heumphreus Decl., ¶ 11. The drivers at this post mainly drove buses within Fort Lewis. *Id.* ¶ 6.

Plaintiff claims that this transfer "resulted in fewer hours, both straight-time hours and overtime hours." Swinnie Decl., ¶ 10.

On February 9, 2007, Plaintiff's doctor provided the Army with a new medical statement in which she lifted Plaintiff's permanent restrictions that were previously outlined in the November 22, 2006 report. Dkt. 18-2, Exh. J. The doctor, however, stated that Plaintiff was "unable to work at Department of Logistics due to stressors at that worksite that are exacerbating depression." *Id*. The doctor did not say that Plaintiff was either "disabled" or was limited in any major life activity. Plaintiff even denied that he was limited in any major life activity. *See* Dkt. 18-2, Exh. M.

Mr. Heumphreus, the head of the DOL, claims that he "checked with other units to see if there were any openings for term employees, and there were none." Heumphreus Decl., ¶ 13. Mr. Heumphreus also claims that "[b]ecause of Mr. Swinnie's inability to work anywhere in DOL, his term appointment was not renewed as we had no work for him." *Id*. ¶ 14.

### III. DISCUSSION

**A.     Motion to Dismiss**

Defendant argues that all of Plaintiff's claims based on acts or events that occurred prior to the forty-five-day period preceding September 7, 2006, the date on which Plaintiff initially contacted an EEO counselor, are untimely and must be dismissed. Dkt. 18 at 6-10. Defendant also argues that Plaintiff's claims for hostile work environment and for failure to accommodate must also be dismissed as they are unexhausted.

A federal employee who believes he or she has been discriminated against must contact an agency EEO counselor within 45 days of an allegedly discriminatory event. 29 C.F.R. § 1614.105(a)(1); *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002). This 45-day time requirement functions as a "statute of limitations for filing suit." *Johnson v. U.S. Treasury Department*, 27 F.3d 415, 416 (9th Cir. 1994). "The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of

discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." *Boyd v. U.S. Postal Service*, 752 F.2d 410, 414 (9th Cir. 1985).

When considering whether claims have been exhausted, the district court must examine both the EEOC charge and the EEOC investigation. *See EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). "The EEOC charge must be construed 'with the utmost liberality.'" *Deppe v. United Airlines*, 217 F.3d 1262, 1267 (9th Cir. 2000) (quoting *Farmer Bros.*, 31 F.3d 891 at 899). Exhausted claims include those actually investigated as well as those which "would have been within the scope of a 'reasonably thorough investigation.'" *Farmer Bros.*, 31 F.3d at 899 n. 5 (citing and quoting *Gibbs v. Pierce County Law Enforcement Support*, 785 F.2d 1396, 1400 (9th Cir. 1986)).

In this case, Plaintiff's claims that are based on disparate treatment that occurred more than 45 days prior to his contact with the EEO office are barred. Plaintiff contacted the EEO on September 7, 2006. Thus, the Court should only consider Plaintiff's claims for pay periods subsequent to and including the July 23 to August 5 pay period, which is the pay period that would have been 45 days prior to Plaintiff's contact with the EEO. Giving Plaintiff the benefit of the doubt as to the dates and the pay periods, the Court will address Plaintiff's claims for discrimination based on three pay periods prior to the July 23 to August 5 pay period.

Likewise, a review of the Plaintiff's EEO complaint and the investigation reveals that Plaintiff failed to present his hostile work environment claim and his disability accommodation claim to the EEO office. *See* Dkt. 18-2, Exhs. E and F; *see also* Swinnie Decl., Exhs. 1-13. Plaintiff has also failed to explicitly allege these claims in his complaint and has raised these claims for the first time in his response to Defendant's motion for summary judgment. *See* Dkt. 1. The Court finds that even in construing Plaintiff's EEO complaint liberally, Plaintiff has failed to show that his hostile work environment and reasonable accommodation claims would have been within the scope of

a reasonably thorough investigation. The EEO complaint and investigation concerned specific acts of discrimination in regard to assigned straight-time and overtime hours and retaliation for Plaintiff's EEO complaint. Neither the complaint nor the investigation concern a hostile work environment or Defendant's failure to reasonably accommodate Plaintiff. With regard to this alleged disability, it is important to note that Plaintiff had failed to put the Army on notice that he was disabled as defined by the applicable law and he even admitted that he was not limited in a major life activity as required by the applicable law.

Therefore, the Court grants Defendant's motion to dismiss Plaintiff's claim for disparate treatment for the pay periods before June 11-24, Plaintiff's claim of a hostile work environment, and Plaintiff's claim for failure to reasonably accommodate based on a disability.

**B.     Motion for Summary Judgment**

Defendant argues that the Court should grant it summary judgment because Plaintiff cannot make a prima facie case of any kind of discrimination. Dkt. 18 at 10-19.

**1.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. Title VII Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating against an employee on the basis of certain characteristics. The section on unlawful employment practices reads as follows:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court not only determined the order in which proof is to be presented in a disparate treatment

case brought under Title VII, but also allocated the burdens of production. *Texas Dep't of Comty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). As a result, it is now firmly established that the plaintiff must first prove a prima facie case of discrimination. If the plaintiff does so, the employer must then present evidence which suggests that it had legitimate, nondiscriminatory reasons for its actions. Should the employer sustain its burden of production, the plaintiff must demonstrate that the reasons given by the employer are a pretext for discrimination. *Watson v. Ft. Worth Bank & Trust*, 487 U.S. 977, 986 (1988); *Allison*, 118 Wn.2d at 88-89.

In this case, Defendant argues that Plaintiff cannot prove disparate treatment based on his race or gender. Dkt. 18 at 12.

        **a.**     **Prima Facie Case**

To establish a prima facie claim of gender- or race-based disparate treatment under Title VII, a plaintiff must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he was subject to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *Cornwell v. Electra Central Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006).

In this case, Defendant does not contest that Plaintiff belongs to protected classes because of his race and gender or that Plaintiff was performing according to the legitimate expectations of the job. Defendant, however, does contest whether Plaintiff was subjected to an adverse employment action and whether similarly situated individuals outside of Plaintiff's protected classes were treated more favorably. Dkt. 18 at 12-17.

Plaintiff claims that he received fewer regular time and overtime hours "from June until September 14, 2006." Dkt. 21 at 15. In support of this claim, Plaintiff has submitted a spreadsheet that compares his hours to the hours worked by Defendant's employees Mr. Apple, Mr. Butts, Mr. Webber, Mr. Williams, and Mr. Zehnpfund. Dkt. 25, Declaration of Jennifer Tennent, Exh. 1. The spreadsheet shows that Plaintiff did

receive less hours than other Caucasian male employees. *Id.* at 1-2. Defendant argues that this evidence "is not complete enough to be, in and of itself, probative of discrimination." Dkt. 28 at 5. The Court agrees as to Plaintiff's claim for gender discrimination because the other individuals are all male. With regard to Plaintiff's claim of race discrimination, it is questionable whether Plaintiff has provided direct evidence of discrimination. Although Plaintiff claims that his hours were "reduced," Plaintiff failed to inform the Court that he was on vacation for certain time periods in question. Taking the facts in the light most favorable to Plaintiff, the Court will address the remainder of the burden shifting analysis.

If Plaintiff establishes a prima facie case, then the burden now shifts to Defendant to present evidence which suggests that the TMP had legitimate, nondiscriminatory reasons for its actions. *See supra*.

### b. Legitimate and Nondiscriminatory Reasons

Defendant claims that Plaintiff's reduction in hours was a result of (1) Plaintiff taking vacation for one of the time periods in question and (2) restrictions on when he could work during another time period. Dkt. 28 at 5-6. First, Mr. Mosher has submitted a document that shows that Plaintiff was normally in the top 10 in hours worked until the pay period of June 11-24 of 2006. Mosher Decl., Exh. A. She claims that Plaintiff took vacation from June 17, 2006 to July 6, 2006. *Id.* Plaintiff worked 84 hours from June 11 to June 16, the six days in the pay period before he went on vacation, and worked 19 hours on July 7 and 8, the two days in the pay period after his vacation. *Id.* Defendant has met its burden in showing a legitimate and nondiscriminatory reason for this alleged adverse action of a reduction in Plaintiff's assigned hours.

Second, Ms. Mosher claims that Plaintiff restricted his availability to work on July 8, 9, 15, 16, 24, 27, 30, and August 1, 2006. Mosher Decl., ¶ 14. Despite these restrictions, Plaintiff worked 89.75 hours in the July 9-22 pay period and 70.75 hours in the July 23-Aug 5 pay period. Defendant has also met its burden in showing a legitimate

and nondiscriminatory reason for this alleged adverse action of a reduction in Plaintiff's assigned hours.

Third, for the final two pay periods before Plaintiff was injured, Ms. Mosher claims that he worked 118.5 hours and 105.75 hours. She claims that this number of hours placed Plaintiff as the tenth highest in hours worked for these periods. Plaintiff's prima facie case is very weak for discrimination during these pay periods because, in at least one of these two pay periods, he worked more hours than every one of his claimed comparators, which were Mr. Apple, Mr. Butts, Mr. Webber, Mr. Williams, and Mr. Zehnpfund. *See* Mosher Decl., Exh. A at 3. Even if Plaintiff established a prima facie case of disparate treatment for hours assigned during either of these two pay periods, Ms. Mosher has set forth legitimate reasons for the inconsistent assignment of hours. She claims that "the scheduling process is not an exact science" and that "many variables" affected her distribution of hours between the numerous TMP employees. Moreover, Ms. Mosher asserts that the drivers were "on-call" workers and were not guaranteed either overtime hours or a straight 40-hour work week.

Fourth, Plaintiff was injured during the final pay period in question, which was September 3-16. *See supra*. Ms. Mosher claims that Plaintiff's doctor restricted his ability to work because of the injury. Mosher Decl., ¶ 15. This is a legitimate, nondiscriminatory reason for the reduction in hours for this pay period.

Therefore, Defendant has met its burden under *McDonnell Douglas* and the burden now shifts to Plaintiff to show that these legitimate, nondiscriminatory reasons are merely pretext.

        **c.**        **Pretext**

The only evidence that Plaintiff cites to that may establish pretext is a statement by Ms. Mosher that "just because [Mr. Swinnie] is black, he shouldn't think the world need to be handed to him on a platter." Swinnie Decl., Exh 3 at 153 (EEO testimony of Ms. Clark). Plaintiff argues that "Ms. Mosher made sure that Mr. Swinnie learned his lesson

and as witnessed by Ms. Clark and Mr. Bennett, Mr. Swinnie was treated differently."
Dkt. 21 at 16. While derogatory, the statement is not substantial evidence to raise a
factual issue that the reasons for Plaintiff's reduction in hours were false or that
discriminatory intention was as work. *See Cornwell*, 439 F.3d at 1031, 1034. Therefore,
Plaintiff has failed to present sufficient evidence of pretext to place the issue of racial
discrimination in the jury's province for decision. *Id*. at 1034.

The Court grants Defendant's motion for summary judgment on Plaintiff's claims for racial and gender discrimination.

### 3. Title VII Retaliation

Title VII "prohibits retaliation against an employee 'because he has opposed any practice made an unlawful employment practice'" by Title VII. *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1082 (9th Cir.1996) (quoting 42 U.S.C. § 2000e-3(a)). To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) his employer took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 646 (9th Cir. 2003).

In this case, it is undisputed that Plaintiff engaged in a protected activity by filing claims with the EEO office. As a result of this activity, Plaintiff claims that Defendant retaliated against him with the following adverse employment actions: (1) the reassignment in December of 2006 to the Main Post TMP to drive buses; (2) the failure to renew his appointment; and, (3) the signing of a petition by co-workers. Dkt. 21-23. Defendant contends that, even if these were adverse actions that were causally connected to the protected activity, Plaintiff has failed to establish that Defendant's legitimate reasons are merely pretext.

#### a. Plaintiff's Reassignment

It is undisputed that, upon returning to work on December 1, 2006, Plaintiff was assigned to the Main Post TMP. While in some circumstances reassignment to a less

favorable position may be an adverse action, Plaintiff has failed to show that his reassignment should be considered an adverse action. The undisputed evidence in the record shows that Plaintiff was reassigned because his doctor restricted his working conditions and those restrictions resulted in Plaintiff not being able to meet the job requirements of the North Fort TMP. *Compare* Dkt. 18-2, Exh. A (job requirements) *with id.*, Exh. I (doctor's letter with permanent work restrictions). Plaintiff's only argument against these facts is that "[w]itness testimony presented during the EEO hearing shows that the lifting requirements were not accurate and true job requirements." Dkt. 21 at 24. Plaintiff fails to cite any authority for the proposition that a court should consider these posted job requirements to be inaccurate or untrue merely because the workers were never asked to meet or exceed them in performing their jobs. Plaintiff's claim is without merit.

### b. Failure to Renew Plaintiff's Appointment

It is undisputed that Defendant did not renew Plaintiff's term appointment on March 31, 2007. Plaintiff claims that this was retaliation because this was the first time that his term was not renewed. Dkt. 21 at 23-24. Even if this established a prima facie case of retaliation, Defendant has set forth a legitimate reason for the failure to renew Plaintiff's appointment because Plaintiff's doctor submitted a letter stating that Plaintiff was "unable to work at [the] Department of Logistics due to stressors . . . ." Dkt. 18-2, Exh. J. Moreover, Mr. Heumphreus states that he tried to find Plaintiff another job before declining to renew Plaintiff's appointment. Therefore, Plaintiff's claim of retaliation is without merit.

### c. Co-Worker's Petition

It is undisputed that Ms. Mosher drafted a petition disparaging Plaintiff. Plaintiff claims that this rises to the level of actionable co-worker retaliation. Dkt. 21 at 22.

"Title VII's protection against retaliatory discrimination extends to employer liability for co-worker retaliation that rises to the level of an adverse employment action."

*Fielder v. UAL Corp.*, 218 F.3d 973, 985 (9th Cir. 2000), *vacated on other grounds*, 536 U.S. 919 (2002); *see also Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir.2000). Employers, however, are not vicariously liable for retaliatory harassment by co-workers; rather, it is only the employer's encouragement or toleration of such harassment that may constitute an adverse employment action. *See Fielder*, 218 F.3d at 984.

In this case, Plaintiff has failed to show that his employer either encouraged or tolerated the harassment. Plaintiff's claim is without merit.

Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for retaliation because Plaintiff has failed to establish either a prima facie case of retaliation or has failed to show that Defendant's legitimate reasons for the adverse actions were merely pretext.

### 4. Rehabilitation Act

Plaintiff claims that he was discriminated against because of his disability. Dkt. 1, ¶ 9. The exclusive remedy for a federal employee claiming discrimination based on disability is under the Rehabilitation Act of 1973 ("Act"). 29 U.S.C. §§ 701 *et seq.*; *Johnson v. Horne*, 875 F.2d 1415, 1420 (9th Cir. 1989). The standards used to determine whether the Rehabilitation Act has been violated are the same as those applied under the Americans with Disabilities Act of 1990. *Coons v. Secretary of the U.S. Department of the Treasury*, 383 F.3 879, 884 (9th Cir. 2004); 29 U.S.C. §§ 791(g), 794(d). The Rehabilitation Act is implemented by 29 C.F.R. § 1614.203.

To perfect a claim of discrimination under the Rehabilitation Act, a plaintiff must demonstrate that (1) he was disabled as defined under the Act; (2) he was otherwise qualified to perform his job, i.e., that he was able to perform the essential functions of the job either with or without reasonable accommodation; and (3) his employer took an adverse employment action against him solely because of his disability. *Broussard v. University of California*, 192 F.3d 1252, 1255-56 (9th Cir. 1999); *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041,1045 (9th Cir. 1999).

1  In this case, Defendant argues that Plaintiff has failed to show that he is disabled as
2  defined by the Act. Dkt. 18 at 15. The Court agrees. Plaintiff claims that he is disabled
3  because he suffers from anxiety and depression. Swinnie Decl., ¶ 15. Plaintiff also
4  claims that "[m]ultiple doctors have diagnosed [him]." *Id*. Defendant counters that
5  Plaintiff "provided no documentation to the Army while he was employed that
6  established that he was limited in any way in any major life activity or that he had a
7  record of such impairment." Dkt. 18 at 16. Moreover, Plaintiff stated at his deposition
8  that he was not impaired in any major life activity. Thus, aside from Plaintiff's
9  unsupported allegations, there is no evidence in the record that Plaintiff is disabled as
10 defined by the Act.

In an effort to cure his failure to produce specific evidence of a disability, Plaintiff attempts to compare himself to the plaintiffs in *Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1087 (9th Cir. 2001) and *McAlindin v. County of San Diego*, 192 F.3d 1226 (9th Cir. 1999). Dkt. 21 at 17-18. Plaintiff's comparison fails, however, because both of those plaintiffs overcame motions for summary judgment by submitting evidence of diagnosed disorders. *See Snead*, 237 F.3d at 1085-87 ("Post-Traumatic Stress Disorder and Depression"); *McAlindin* 192 F.3d at 1230 (diagnosed as suffering from anxiety disorders, panic disorders, and somatoform disorders). Plaintiff has submitted no evidence either to the Court or to his employer that he is disabled. Moreover, Plaintiff cites no authority for the proposition that he can overcome a motion for summary judgment based on a self-diagnosis of anxiety and depression.

Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for discrimination based on his disability.

### 5. Sexual Favoritism

Plaintiff claims that he was discriminated against based on sexual favoritism. Dkt. 21 at 20. Essentially, Plaintiff claims that Ms. Mosher had an improper relationship with Mr. Butts and gave Mr. Butts more favorable shifts than Plaintiff. *See id*. Plaintiff,

however, fails to cite any authority for the proposition that "sexual favoritism" creates a cognizable claim under Title VII. Plaintiff does cite *Miller v. Dep't of Corrections*, 36 Cal.4th 446 (2005), but that case was brought under California's Fair Employment and Housing Act. Plaintiff's claim is wholly without merit.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant's Motion to Dismiss and/or for Summary Judgment (Dkt. 18) is **GRANTED** as stated herein and this action is **DISMISSED**.

DATED this 8th day of April, 2009.

BENJAMIN H. SETTLE
United States District Judge